UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA YATSKO, Co-Administrator of the Estate of Thomas Yatsko, | ) ) ) | CASE NO. 1:18 CV 1675 |
| and | ) ) | |
| DARIAN ALLEN, Co-Administrator of the Estate of Thomas Yatsko, | ) ) ) ) | JUDGE DAN AARON POLSTER |
| Plaintiffs, | ) ) | **OPINION AND ORDER** |
| vs | ) ) ) | |
| SERGEANT DEAN GRAZIOLLI, *et al.*, | ) ) | |
| Defendants. | ) ) | |

Before the Court is Safeco Insurance Company of Indiana's ("Safeco") Motion for Judgment on the Pleadings, Doc #: 13.[1] For the following reasons, Safeco's Motion is **GRANTED**.

**I.    Facts**

   **A.    Background**

Melissa Yatsko and Darian Allen, individually and as Co-Administrators of the Estate of Thomas Yatsko, brought the underlying case in this action, *Yatsko v. Graziolli*, Case No. 1:18-cv-814 (the "Underlying Action"), on April 4, 2018. Doc #: 48; 1:18-cv-814.[2] Plaintiffs in the Underlying Action filed their First Amended Complaint on March 1, 2019 and their Second Amended Complaint on March 31, 2019. Doc #: 41, 48.[3] The Underlying Action arises from an incident that occurred on the night of January 13, 2018 and resulted in Defendant Sergeant Dean

---
[1] All record citations will be to 1:18-cv-1675 unless otherwise noted.
[2] Hereinafter referred to as the "Yatsko Complaint."
[3] All record citations to the Underlying Complaint contained herein are in reference to the Second Amended Complaint. Doc #: 48.

1

Graziolli shooting and killing Thomas Yatsko just outside of the Corner Alley.  Yatsko Compl. ¶ 1.

That evening, Sgt. Graziolli was working as security for Corner Alley.  Yatsko Compl. ¶ 15, 19-20.  When Yatsko got into an argument with a friend inside Corner Alley, Sgt. Graziolli escorted them out of the bar.  Yatsko Compl. ¶ 19-20.  Yatsko was lingering on the sidewalk outside Corner Alley, when Sgt. Graziolli approached Yatsko again, this time unprovoked.  Yatsko Compl. ¶ 21-22.  Sgt. Graziolli became more aggressive in telling Yatsko to leave the premises, brandishing his Cleveland Police Department-issued weapon and pointing it at Yatsko when he refused to leave.  Yatsko Compl. ¶ 22, 26.  Sgt. Graziolli and Yatsko proceeded to get into a physical altercation on the sidewalk outside Corner Alley.  Yatsko Compl. ¶ 27.  While engaged with Yatsko, Sgt. Graziolli was wearing a City of Cleveland police officer's uniform and badge, announced that he was a Cleveland police officer multiple times, and brandished his City-issued firearm.  Yatsko Compl. ¶ 30.  During that altercation, Sgt. Graziolli fired his weapon, fatally wounding Yatsko.  Yatsko Compl. ¶ 28, 34.  Sgt. Graziolli states that on the night of the shooting he was employed by both Corner Alley and the City of Cleveland.  Doc #: 10 ¶ 10.

Plaintiffs in the Underlying Action bring both federal and state law claims against Sgt. Graziolli.  Yatsko Compl. PageID #: 414, 416, 419, 421-22, 427.  Plaintiffs also bring federal and state law claims against the City of Cleveland and the Chief of Police for the City of Cleveland Calvin Williams.  *Id*. at PageID #: 417, 427.  Plaintiffs bring Ohio state tort claims against MRN Group, LLC, MRN Investment Group, LLC, MRN Enterprises, LLC, MRN Development Corporation, MRN Limited Partnership, Corner Alley, LLC, Corner Alley

Uptown, LLC, Corner Alley Fourth Limited Partnership, and 629 Euclid Ltd. (collectively "Corner Alley Defendants").[4,5] *Id.* at PageID # 419, 421-23, 425, 427.

### B. Safeco Insurance Policy

Safeco brought the instant action on July 19, 2018 because Sgt. Graziolli requested that Safeco defend and indemnify him in the Underlying Action pursuant to Homeowner's Insurance Policy #OK5308888 ("Policy"), issued by Safeco to Sgt. Graziolli. Doc #: 1, ¶ 32-34.[6] Safeco seeks a declaratory judgment that it has no duty to defend or indemnify Sgt. Graziolli in the Underlying Action.

This Opinion only addresses Safeco's duty to defend because it is premature to determine whether Safeco has a duty to indemnify Sgt. Graziolli. "The duty to defend is broader than the duty to indemnify 'because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact.'" *Acuity v. Reed & Assocs. of TN, LLC*, 124 F. Supp. 3d 787, 790 (W.D. Tenn. 2015) (citations omitted). *See Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413 (Ohio Ct.App.1999) ("[O]nce a duty to defend is recognized, speculation about the insurer's ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation"). Safeco only has a potential duty to indemnify at this time and "[f]ederal courts may not … give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citations omitted). Therefore, the Court will consider only whether Safeco has a duty to defend Graziolli.

---

[4] Plaintiff's First Amended Complaint added MRN Limited Partnership to the Corner Alley Defendants. Doc #: 43, 1:18-cv-814.
[5] Plaintiff's Second Amended Complaint added 629 Euclid Ltd. and removed MRN Investments Limited Partnership, MRN Investments Limited Partnership II, and MRN Investments Limited Partnership III from the Corner Alley Defendants.
[6] Hereinafter referred to as the "Safeco Complaint."

Safeco cites three different exclusions in the Policy as evidence it does not have a duty to defend Sgt. Graziolli. The first exclusion is a "business pursuits" exclusion. Safeco Compl., Ex. B, Policy at 15, §(1)(c). Under this provision, the Policy will not provide coverage for "bodily injury" "arising out of business pursuits of any insured." *Id*. This exclusion does not apply to "activities which are ordinarily incident to non-business pursuits[.]" *Id*. at §(1)(c)(1). The Policy defines "business" as:

> a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:
>
> (1) One or more activities, not described in (2) below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and
>
> (2) volunteer activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

*Id.* at 24, §(3)(c).

The second exclusion is for "professional services." Under this provision, the Policy will not provide coverage for "bodily injury" "arising out of the rendering or failing to render professional services[.]" *Id*. at 15, §(1)(d).

The third exclusion is "personal offense" coverage. "Personal offense" coverage will be given for "damages resulting from an offense defined under 'personal offense' and to which this coverage applies[.]" Safeco Compl., Ex. B, Personal Offense Addendum at 1. This "personal offense" coverage does not apply to a "personal offense" "arising out of or in connection with a business conducted by an insured[.]" *Id*. at 1, §(g). The Policy defines "personal offense" as an "injury arising out of one or more of the following offenses:

> (1) false arrest, detention or imprisonment;
>
> (2) malicious prosecution;
>
> (3) wrongful eviction or wrongful entry;

4

> (4) oral or written publication, in any manner, of material that slanders, libels or defames the character of a person, which occurs in any manner; or
>
> (5) invasion of privacy, which occurs in any manner."

*Id.* at 3.

Defendant Sgt. Graziolli filed an Answer to this declaratory judgment action on January 30, 2019. Doc #: 10. Safeco then filed the instant Motion for Judgment on the Pleadings on April 10, 2019. Doc #: 13. Sgt. Graziolli filed his Response brief on May 24, 2019. Doc #: 16. Safeco filed its Reply brief on May 31, 2019. Doc #: 18.

## II. Analysis

### A. Standard of Review

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). A 12(b)(6) motion tests the sufficiency of the complaint. *Gardner v. Quicken Loans, Inc.*, 567 Fed.Appx. 362, 364 (6th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "All well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks and citation omitted).

### B. Judicial Estoppel

Sgt. Graziolli argues in his Response brief that Safeco has a duty to defend him because a fact-finder could ultimately determine that he was neither an employee of Corner Alley nor the

City of Cleveland at all relevant times the night he shot Thomas Yatsko, and that therefore the policy exclusions do not apply. But Sgt. Graziolli explicitly states in his Answer to the Underlying Action that "at the time of the events described, he 'was working special duty at the Corner Alley Uptown … and was acting under color of law and within the course and scope of his employment with the Defendant City [of Cleveland].'" Doc #: 10 ¶ 10; Safeco Compl. ¶ 13. Sgt. Graziolli is estopped from asserting in this declaratory judgment action that he was acting as a private citizen while simultaneously asserting in the Underlying Action that he was acting as a law enforcement officer and a security guard.

Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The doctrine of judicial estoppel is equitable and can be invoked at the court's discretion. *Lewis*, 141 F. App'x at 424. The purpose of judicial estoppel is to protect the integrity of the courts and prevent parties from "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "having one's cake and eating it too." *Id*. (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988) (internal quotation omitted)). Sgt. Graziolli may not assert a defense in the Underlying Action as a law enforcement officer and security guard, and then claim that he is covered under his homeowner's insurance policy that specifically excludes coverage of the challenged conduct that occurred when he was working.

### C. Policy Exclusions

Safeco argues that three exclusions apply pursuant to the Policy. The Court need only find that one exclusion applies. However, the Court finds that all three apply.

### 1. "Business Pursuits" Exclusion

Safeco has no duty to defend Sgt. Graziolli in the Underlying Action because the "business pursuits" exclusion applies. Safeco alleges that Sgt. Graziolli is precluded from coverage under the "business pursuits" exclusion because at the time of the shooting Sgt. Graziolli was acting as both a security guard for Corner Alley and a law enforcement officer for the City of Cleveland.

The Policy defines "business" as "a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation." Policy at 24, §3(c). Sgt. Graziolli's Answer states that his employment with both Corner Alley and the City of Cleveland was held on a "full-time, part-time or occasional" basis and was engaged in for money. Doc # 10, ¶ 12. There are two exceptions to this definition that, when applicable, do not qualify an insured's activities as "business" under the Policy. The first exception is that "no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period" for the activities described. Policy at 24, §3(c). This exception does not apply here because Sgt. Graziolli states in his Answer that, as an employee for both the City of Cleveland and Corner Alley, he earned more than $3,000 in the 12 months prior to May 18, 2017, the beginning of the Policy period. Doc #: 10 ¶ 12; Safeco Compl. ¶ 35. The second exception is that "volunteer activities for which no money or other compensation is received" are not "business." Policy at 24, §3(c). This exception also does not apply because Sgt. Graziolli was not acting in a volunteer capacity in either position. Therefore, Sgt. Graziolli's actions as both an employee of Corner Alley and the City of Cleveland qualify as "business pursuits" under the Policy.

As Safeco notes in its Reply, Sgt. Graziolli "does not dispute that working for the City of Cleveland and working for Corner Alley constitute 'business' pursuits under the Policy." Doc #: 49, PageID #: 431. Sgt. Graziolli instead argues in his Response that there is an issue of fact as to whether he was "acting out business pursuits" at the time of the incident by claiming that "the pleadings leave open the potential that [he] may have been acting in self-defense in his individual capacity as opposed to within the scope of his role as a police officer or security guard." Doc #: 16, PageID #: 260. This argument fails because even if Sgt. Graziolli acted out of self-defense, the incident nonetheless occurred while he was working for Corner Alley, the City of Cleveland, or both.

### 2. "Professional Service" Exclusion

Even if the Court found that the "business pursuits" exclusion did not apply, Safeco has no duty to defend under the "professional service" exclusion. Safeco alleges Sgt. Graziolli is precluded from coverage under the "professional service" exclusion because his employment as both a security guard and law enforcement officer constitute "professional services."

The Policy does not define "professional services," but Ohio courts have defined "professional services" as both services "requiring advanced knowledge in a field acquired by a prolonged course of study or specialized intellectual instruction" and "performed by one in the ordinary course of his profession, on behalf of another, pursuant to an agreement, and for which compensation is reasonably expected." *Ins. Co. of Pa. v. Vimas Painting Co., Inc.,* 2007 WL 1412988 at *14 (N.D. Ohio, May 10, 2007) (citations omitted).

Sgt. Graziolli admits in his Answer that he was acting within the scope of his employment. Thus, the only question at issue is whether this employment, either as a security guard or as a law enforcement officer, constitutes a professional service. In *Lansing*, the court

8

indicated that "because police officers receive specialized training and education and often are called upon to make decisions using this specialized training, their activities may constitute 'professional services.'" *Lansing Cmty. Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2010 WL 774877 at *9 (W.D. Mich., March 1, 2010). Sgt. Graziolli firing a gun issued by the Cleveland Police Department implicates the precise kind of circumstance that requires a police officer to act on his specialized training. Accordingly, if the jury determines that Sgt. Graziolli was acting as a police officer when he shot Yatsko, the "professional services" exclusion applies.

On the other hand, should the jury determine that Sgt. Graziolli was working as a security guard at the time of the incident, the "professional service" exclusion would still apply. Sgt. Graziolli was hired as a security guard because of his specialized skills as a police officer. Therefore, he used the same specialized training to perform his security guard duties, and the "professional services" exclusion applies.

### 3. "Personal Offense" Coverage

Even still, if the Court found neither the "business pursuit" nor "professional services" exclusions applied, Safeco has no duty to defend based on the "personal offense" exclusion. Safeco alleges that the Policy's "personal offense" coverage cannot be invoked because the Underlying Complaint makes no allegation or claim that constitutes any of the enumerated "personal offenses."

While Sgt. Graziolli concedes that none of the "personal offenses" listed in the Policy were specifically pleaded, Sgt. Graziolli argues that the facts could be interpreted to include liability for "false arrest, detention or imprisonment." His argument is that the Policy "does not explain whether the offense must be specifically plead[ed] as a cause of action, or whether the facts surrounding the incident must simply constitute what might normally be called that

9

particular offense." Doc #: 16 at 12. However, the Court will only consider the claims actually pleaded in the Complaint and will not shoehorn the allegation of wrongful death into a false arrest claim, as Sgt. Graziolli suggests in his Response. Accordingly, Yatsko's claim does not implicate Safeco's "personal offense" coverage.

Additionally, even if somehow the claims in the Underlying Action fall under one of the "personal offenses," the Policy's "personal offense" coverage does not apply when the offense "aris[es] out of or in connection with a business conducted by an insured." Personal Offense Addendum at 1, §(g). As detailed above, Sgt. Graziolli acknowledges in his Answer to the Underlying Action that he was working when he shot Yatsko. Safeco therefore has no duty to defend Sgt. Graziolli in the Underlying Action and "personal offense" coverage does not apply because Sgt. Graziolli was engaged in the business of a police officer and/ or a security guard.

### III. Conclusion

Accordingly, Plaintiff's Motion for Judgment on the Pleadings, Doc #: 13, is **GRANTED** with respect to Safeco's duty to defend Sgt. Graziolli in the Underlying Action. The Court declines to rule on Safeco's claim that there is no duty to indemnify, as this claim is premature.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster June 17, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT COURT**